GAINEY v SIELOFF

Docket No. 77613. Submitted October 7, 1985, at Detroit. Decided September 15, 1986. Leave to appeal applied for.

Joseph Gainey and Enola Gainey brought an action in the Wayne Circuit Court against Norman Sieloff, a Detroit police officer, the City of Detroit, and other individual police officers, alleging damages arising out of an alleged incident of police brutality.

The defendant police officers testified as follows. They raided Ricky's Restaurant, which was owned by plaintiffs, based on information that two men were dealing drugs there. As they approached the restaurant, a crowd dispersed and two individuals ran inside. As Officer Sieloff began to open the door, it was slammed in his face. He then managed to get inside, where he was confronted by plaintiff Joseph Gainey with a stick. Soon, the other officers were able to push their way in, and they saw Sieloff and Gainey engaged in a physical struggle. Officers Smolinski and Sumner pulled Gainey away and removed him from the premises. Gainey resisted strongly and, as they got through the door, they fell to the sidewalk.

Gainey testified as follows. He was holding the door closed during a shift change, when the police burst in unannounced. As the door was flung open, Gainey was knocked to the floor. As he tried to get up, a police officer struck him on the arm with a black, cylindrical object. Although he did not struggle, an officer kicked him in the stomach while two others dragged him outside. There, he was thrown to the ground, kneed in the back and handcuffed. Because of the trauma, he urinated in his pants. Gainey was taken to the First Precinct station. While handcuffed and confined to the bullpen, Officer Sieloff struck him in the mouth. He was then handed a citation for interfering with a police officer in the performance of his duty. Gainey noticed that his left arm was swelling and requested medical treatment. Once he was taken to the hospital he had to wait

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 et seq.

Am Jur 2d, Jury § 227.

See the annotations in the Index to Annotations under Appeal and Error; Instructions to Jury.

several hours in the emergency room. The hospital staff then determined that he had a broken arm, and they applied a temporary cast. He was held overnight as a police prisoner with his right arm handcuffed to the bed. Gainey eventually underwent surgery and a metal plate was screwed to the bone to secure the fracture. There was permanent injury to the arm because of damaged nerves which could not be surgically corrected. Gainey also underwent an operation on a preexisting hernia which was apparently aggravated in the course of his arrest.

Gainey was never convicted of the interference charge as the police officers failed to appear at the time scheduled for trial. The jury returned a verdict against defendants Sieloff, Smolinski and Sumner on a claim brought under 42 USC 1983, a verdict against Sieloff and the City of Detroit on a claim for assault and battery, and a verdict against each individual officer for negligence. Defendants appealed, alleging numerous errors.

The Court of Appeals *held:*

1. The court did not abuse its discretion in holding that an expert defense witness's testimony lacked a proper foundation. Failure to pursue laying a foundation constituted abandonment of the issue.

2. The court did not abuse its discretion in excluding evidence of narcotics and drug paraphernalia found at Ricky's Restaurant at the time of Gainey's arrest as being more prejudicial than probative. Further, defendants failed to preserve any significant question by not offering the evidence when the court could review the other evidence on the record at the trial.

3. The court did not abuse its discretion in allowing plaintiffs to introduce evidence of prior civil judgments against two of the officers. The Court of Appeals believed the purpose of the evidence was to establish municipal liability and the court did not err in concluding its probative value outweighed the danger of unfair prejudice.

4. The court's allowing plaintiffs to call certain witnesses not listed as required by the applicable local court rule did not require reversal. Good cause was shown for the failure to list one of the witnesses. Another's testimony was cumulative of plaintiffs' and the third gave testimony on a theory of recovery for which the jury returned a verdict of no cause of action.

5. The court did not err in refusing to admit certain immaterial evidence.

6. In civil actions, the failure of the trial court to give an accurate, applicable, and properly requested standard jury

instruction should not result in automatic reversal on appeal. A jury verdict should be vacated only where the failure to do so would be inconsistent with substantial justice. The court's failure to give a certain requested standard jury instruction was harmless error.

7. A party's objection to the court's refusal to give a requested jury instruction must be specific in order to preserve the issue for review. Defendants' objection to the court's refusal to give a certain instruction was not specific so as to preserve the issue for review.

8. Defendants were not prejudiced by the court's failure to give all of the standard jury instruction on comparative negligence and compensatory damages.

9. Defendants failed to preserve for appeal the issue of the court's instruction on the credibility of police officer witnesses and the instruction on the officers' duty to knock and announce before entering the restaurant.

10. Defendants were not denied a fair trial by the conduct of plaintiffs' counsel.

11. The court properly denied defendants' motion for summary judgment based on governmental immunity. Effecting an arrest is a ministerial-operational act of government to which governmental immunity does not apply.

12. The trial court properly refused to reconvene the jury. The facts alleged by the defendants constitute a misunderstanding of the verdict by the jury. Members of a jury, after the jury has been polled and discharged, may not challenge mistakes or misconduct inherent in the verdict, and oral testimony or affidavits by the jurors may only be received on extraneous or outside errors or to correct clerical errors or matters of form. A misunderstanding by the jury of the verdict form generally inheres in the verdict.

13. The court erred in the award of attorney fees. The local court rule allowed an award of attorney fees for the hours actually spent in court at the rate prevailing locally. The attorney fee award allowed under the federal civil rights act is governed by federal law.

14. The court properly refused remittitur.

Affirmed in part and remanded to reconsider attorney fees.

1. EVIDENCE — APPEAL — RULES OF EVIDENCE — PRESERVING QUESTION.

A party must, absent plain error affecting substantial rights, preserve error in the admission or exclusion of evidence by a timely objection to admitted evidence or by an offer of proof of excluded evidence (MRE 103).

2. EVIDENCE — OPINION TESTIMONY — RULES OF EVIDENCE.

A trial court may require that the underlying facts or data for an opinion be put in evidence prior to the opinion's being given (MRE 703, 705).

3. APPEAL — STANDARD JURY INSTRUCTIONS.

In civil actions, the failure of the trial court to give an accurate, applicable, and properly requested Standard Jury Instruction should not result in automatic reversal on appeal; a jury verdict should be vacated only where the failure to do so would be inconsistent with substantial justice (MCR 2.516, 2.613).

4. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION — COURT RULES.

A party's objection to the court's refusal to give a requested jury instruction must be specific in order to preserve the issue for review (GCR 1963, 516.2; MCR 2.516[C]).

5. GOVERNMENTAL IMMUNITY — ARREST.

Effecting an arrest is a ministerial-operational act of government to which governmental immunity does not apply; an officer may not employ excessive force in making an arrest.

6. JURY — JURORS — IMPEACHMENT OF VERDICTS.

Members of a jury, after the jury has been polled and discharged, may not challenge mistakes or misconduct inherent in the verdict, and oral testimony or affidavits by the jurors may only be received on extraneous or outside errors or to correct clerical errors or matters of form; a misunderstanding by the jury of the verdict form generally inheres in the verdict.

*Fried & Saperstein, P.C.* (by *Juan A. Mateo*), for plaintiffs.

*Donald Pailen*, Corporation Counsel, and *William L. Woodard* and *Harnetha Williams-Jarrett*, Assistant Corporation Counsel, for defendants.

Before: R. M. MAHER, P.J., and WAHLS and HOOD, JJ.

PER CURIAM. Plaintiffs obtained a jury verdict in their favor for damages arising out of an alleged instance of police brutality. Defendants appeal as of right.

The defendant police officers testified that they raided Ricky's Restaurant, which was owned by plaintiffs, based on information that two men were dealing drugs there. As they approached the restaurant, a crowd dispersed and two individuals ran inside. As Officer Sieloff began to open the door, it was slammed in his face. He then managed to get inside, where he was confronted by plaintiff Joseph Gainey with a stick. Soon, the other officers were able to push their way in, and they saw Sieloff and Gainey engaged in a physical struggle. Officers Smolinski and Sumner pulled Gainey away and removed him from the premises. Gainey resisted strongly and as they got through the door, they fell to the sidewalk.

Gainey testified that he was holding the door closed during a shift change, when the police burst in unannounced. As the door was flung open, Gainey was knocked to the floor. As he tried to get up, a police officer struck him on the arm with a black, cylindrical object. Although he did not struggle, an officer kicked him in the stomach while two others dragged him outside. There, he was thrown to the ground, kneed in the back and handcuffed. Because of the trauma, he urinated in his pants.

Gainey was taken to the First Precinct station. He testified that, while handcuffed and confined to the bullpen, Officer Sieloff struck him in the mouth. He was then handed a citation for interfering with a police officer in the performance of his duty. Gainey noticed that his left arm was swelling and requested medical treatment. It is unclear how long a delay occurred, but once he was taken to the hospital he had to wait several hours in the emergency room. The hospital staff then determined that he had a broken arm, and they applied a temporary cast. He was held overnight as a

police prisoner with his right arm handcuffed to the bed.

Gainey eventually underwent surgery and a metal plate was screwed to the bone to secure the fracture. There was permanent injury to the arm because of damaged nerves which could not be surgically corrected. Gainey also underwent an operation on a preexisting hernia which was apparently aggravated in the course of his arrest. Gainey was never convicted of the interference charge as the police officers failed to appear at the time scheduled for trial.

Plaintiffs filed a nine-count complaint. Pursuant to an order granting partial summary judgment, Count VIII was dismissed. The remaining counts were submitted to the jury. The jury returned a verdict of no cause of action as to Count II, conspiracy pursuant to 42 USC 1985, Count IV, malicious prosecution, Count VI, false arrest and imprisonment, and Count VII, intentional infliction of emotional distress. As to Count I, a claim brought under 42 USC 1983, the jury found liability only against Officers Sieloff, Smolinski and Sumner. As to Count V, a claim for assault and battery, the jury found direct liability only against Sieloff and found vicarious liability against the City of Detroit. As to Counts I and V, the jury awarded actual damages of $100,000, exemplary damages of $50,000, and punitive damages of $30,000 with respect to the federal claim. The jury also concluded, as to Count III, that each of the officers was liable for negligence. With respect to the negligence count, the jury found that plaintiff's total damages, without duplicating any damages awarded on Counts I and V, were $100,000 in actual damages and $50,000 in exemplary damages. As to Count IX, plaintiff Enola Gainey's claim for loss of consortium, the jury awarded $75,000.

I

Defendants challenge several evidentiary rulings by the trial court. Defendants assert that these rulings, both individually and collectively, deprived them of a fair trial. Our review is predicated on the threshold of MRE 103, which provides that, in the absence of plain error affecting substantial rights, a party must preserve error by a timely objection to admitted evidence or by an offer of proof of excluded evidence.

A

Defendants first argue that the court erred in excluding the expert opinions of Dr. Joseph Posch on the cause and extent of Gainey's injuries. Plaintiffs' expert had testified that Gainey's broken arm was probably caused by being struck with great force by a blunt object. The expert admitted that there was some possibility that the injury could have been caused by a fall but explained why that was unlikely. Defendants clearly desired to elicit testimony from Dr. Posch that Gainey's injury was likely caused by a fall. Plaintiffs objected on the basis that the foundation for the opinion was not clear. The court sustained the objection and defendants did not pursue the matter further. We find no reason to reverse. MRE 703 and 705 give the court the discretion to require that the underlying facts or data for an opinion be put in evidence prior to the opinion's being given. Here, we find no abuse of discretion. Defendants' failure to pursue laying a foundation constituted abandonment of the issue.

Defendants also sought an opinion from Dr. Posch about what effect Gainey's surgery might have had on his radial or ulnar nerves. Plaintiffs' objection questioned the foundation for the opinion and apparently went to relevancy. The court ex-

pressed an inability to recall any testimony by plaintiffs' expert about such nerves but invited defendants to point to something in the record. Defendants said there was something about numbness, and the court responded that defendants should begin there. Defendants, however, did not pursue the matter and did not make an offer of proof and, therefore, have not preserved the issue for appeal.

Defendants also asked Dr. Posch his opinion about the effect of surgery to install a plate in an arm on a person's range of motion of that arm. The court sustained plaintiffs' objection on the basis that defendants needed to deal with the specific facts of this case. Again, defendants failed to make an offer of proof or pursue the matter, so we deem the issue waived.

**B**

Defendants had evidence of narcotics and paraphernalia seized from Ricky's Restaurant at the time of Gainey's arrest. Plaintiffs brought a motion in limine to exclude this evidence. The court found the evidence relevant to the reason that the defendant police officers were at the place. However, the court granted the motion on the ground that the evidence was more prejudicial than probative. The court indicated that its ruling was provisional and could change depending upon the nature of the evidence at trial. Defendants did not thereafter seek to introduce the evidence. We find no abuse of discretion in the court's ruling. Defendants have failed to preserve any significant question here by not offering the evidence when the court could review the other evidence on the record at the trial.

**C**

Defendants contend that the court erred in per-

mitting evidence of prior civil judgments against two of the officers. The trial court had ruled that plaintiffs could introduce evidence of prior judgments with respect to their federal claims against the City of Detroit. Plaintiffs sought to prove that the city had a policy of retaining police officers notwithstanding their violent propensities.

In spite of the court's ruling, defendants still objected when plaintiffs elicited the evidence at trial. In one instance, plaintiffs met defendants' objection by stating that the evidence was relevant to a showing of the use of excessive force.

Defendants now argue that the evidence was improper because it was offered to show that the individual defendants acted in accordance with their prior behavior. We are not persuaded. Notwithstanding plaintiffs' reference to excessive force, we are persuaded that plaintiffs' purpose was to establish municipal liability. Thus, the evidence was not offered for a prohibited purpose. MRE 404 and 608. Furthermore, we do not find that the court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403.

### D

Defendants next challenge the court's ruling permitting plaintiffs to call Ernest Lee, Dr. Schwartz and James Feinberg as witnesses, notwithstanding plaintiffs' failure to list the witnesses as required by WCCR 301.3(d). The local court rule prohibits calling an unlisted witness except as the court orders for good cause shown or as permitted by other provisions in the rule. Here, the court allowed the witnesses to be called after noting that counsel were from busy law firms and discovery had been protracted by all involved. The court

permitted defendants to file a witness list at that time as well.

On appeal, defendants argue that the local court rule is mandatory and that their own failure to file a witness list cannot excuse plaintiffs, who had the burden of proof. Plaintiffs respond that the court had discretion to allow plaintiffs to call the witnesses, citing *Rittenhouse v Erhart,* 126 Mich App 674, 680; 337 NW2d 626 (1983), rev'd in part on other grounds, 424 Mich 166; 380 NW2d 440 (1985).

*Rittenhouse* is not on point, as it does not address the provisions of the Wayne County rule. As to Dr. Schwartz, we are persuaded that good cause was shown because plaintiffs had resorted to him as a treating doctor only about a month before trial. We are not convinced that plaintiffs showed good cause for not timely listing Lee and Feinberg. Nevertheless, we find the error harmless. Notwithstanding Feinberg's testimony as an expert on malicious prosecution, the jury returned a verdict of no cause of action on that count. Lee's testimony was cumulative of plaintiffs'.

E

In their complaint, plaintiffs alleged that their restaurant and nearby grocery store were destroyed by fire because Gainey was in the hospital and therefore unable to supervise the business. To refute this claim, defendants unsuccessfully sought to introduce evidence that the fire started in a second floor apartment after the businesses had closed. The court ruled the offered evidence immaterial because, notwithstanding the complaint, plaintiffs had not presented any proofs during trial to put this matter in issue. We agree with the trial court and find no error. Enola Gainey's testimony in this regard was that her husband's hospitaliza-

tion kept him from salvaging the appliances, not from preventing the fire in the first instance.

**F**

Defendants lastly challenge the testimony of Feinberg as an expert on malicious prosecution. However, as the jury returned a verdict of no cause of action on the malicious prosecution claim, we think that the error, if any, was harmless.

**II**

Defendants next assign error to several rulings of the trial court regarding jury instructions. Since the presentation of this case to us, the Supreme Court has modified the standard of review where an applicable and accurate standard jury instruction has been requested and denied. No longer will error be presumed and automatic reversal required. *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985); *Moody v Pulte Homes, Inc,* 423 Mich 150; 378 NW2d 319 (1985). We will vacate a jury verdict for noncompliance with MCR 2.516 only when the error is such that failure to set aside the verdict is "inconsistent with substantial justice." MCR 2.613(A).

**A**

Defendants contend that the court erred reversibly in failing to give the first sentence of SJI2d 115.21, which provides, "Plaintiff has the burden of proving that defendant willfully and intentionally touched the plaintiff against the plaintiff's will." Plaintiffs respond that the instruction was not really applicable because the focus of the assault and battery instructions as a whole was on whether the officers used excessive force.

We agree with plaintiffs' argument. We do note that pursuant to plaintiffs' theory of the case there

were two bases for an assault and battery verdict —excessive force used on Gainey at the restaurant and the punch in the face at the precinct station. The instructions given by the court, however, seem to address only the incident at the restaurant, as the instructions include voluntary fighting by Gainey, excessive or unreasonable force by the officers, resisting an unlawful arrest, and self-defense by Officer Sieloff. Taking these instructions as a whole, to which defendants did not object, the addition of SJI2d 115.21, which the court apparently omitted by mistake, would not have made the instructions complete or significantly clarified the burden of proof in light of the facts of this case. Accordingly, we conclude that the error was harmless.

**B**

Defendants requested SJI2d 6.01 on failure to produce a witness. This instruction has four alternative paragraphs and requires the court to determine which is applicable by making findings about the party's control over the evidence, reasonable excuse for failure to produce the evidence and materiality and availability of the evidence.

No record was made of the in-chambers conference on jury instructions and hence there is no record of the court's findings on the three factors stated above. Defendants' subsequent objection to the court's refusal to give the instruction was not specific so as to preserve the issue for review. GCR 1963, 516.2, now MCR 2.516(C).

**C**

Defendants also contend that the court erred reversibly by failing to give all of that part of SJI2d 16.02 addressing comparative negligence. We disagree. The court clearly instructed that the amount of damages to which Gainey would other-

wise be entitled must be reduced by the percentage of his negligence which was a proximate cause of his injury. This adequately substituted for the omitted portion, so defendants were not prejudiced.

**D**

Defendants argue that reversible error occurred because the court failed to give the last sentence of SJI2d 50.01: "Your verdict must be solely to compensate plaintiff for his damages, and not to punish the defendant." In its place, the court gave a longer instruction in an effort to explain exemplary and punitive damages and their applicability to the federal and state claims. Significantly, the special verdict form made a breakdown of actual, exemplary and punitive damages with the question of punitive damages being reached only if the jury answered yes to either of the questions dealing with the constitutional rights claims under 42 USC 1983 and 1985. Between the instruction given and the special verdict form, we are convinced that defendants were not prejudiced.

**E**

The court gave an instruction similar to CJI 5:2:13 on the credibility of police officers, notwithstanding that SJI2d 4.09 suggests that SJI2d 4.01 is sufficient and recommends that no instructions on the credibility of special categories of witnesses be given. GCR 1963, 516.6(3), now MCR 2.516(D)(3), required the court to state on the record its reasons for giving an instruction that the SJI committee recommends against. The court in this case did not comply with the court rule, but neither did defendants object to the noncompliance. Nor did defendants specify the grounds for their objection to the instruction. Accordingly, we will not reverse as we do not find that defendants were deprived of

a fair trial. *Moskalik v Dunn,* 392 Mich 583; 221 NW2d 313 (1974). We acknowledge plaintiffs' observation that federal courts have held that such instructions are proper in police misconduct cases under 42 USC 1983. See *Kerr v Chicago,* 424 F2d 1134 (CA 7, 1970); *Roberts v Hollocher,* 664 F2d 200 (CA 8, 1981); cf., *Darbin v Nourse,* 664 F2d 1109 (CA 9, 1981).

**F**

Defendants contend that the court erred in giving an instruction that the officers violated the Fourth Amendment if they failed to knock and announce before entering Ricky's Restaurant unless they had facts justifying a belief that immediate entry was necessary. On appeal, defendants argue that this instruction was erroneous because the restaurant was a public place. *United States v Santana,* 427 US 38; 96 S Ct 2406; 49 L Ed 2d 300 (1976). Plaintiffs respond that the restaurant was closed to the public at the time the police entered so that the instruction was correct given the facts of the case.

Defendants did not specify their ground for objection in the court below but merely identified which instruction they were objecting to. This was insufficient to preserve the claimed error for review. GCR 1963, 516.2.

**III**

Defendants next assert that misconduct by plaintiffs' counsel deprived them of a fair trial. Regarding the opening statement, defendants contend that plaintiffs' counsel first set a highly charged tone to the proceeding and then began to argue improperly to the jury. Defendants point to three instances of improper argument. To two of these, defendants' objections were sustained by the

court. As to the third, defendants failed to object. We find that defendants were not denied a fair trial.

Defendants claim that plaintiffs introduced irrelevant evidence of Enola Gainey's diabetic condition without tying it in as promised. Defendants never moved to strike the evidence after plaintiffs failed to prove its relevance. We do not find that plaintiffs engaged in misconduct. This is merely an evidentiary question which defendant failed to preserve for appeal.

During cross-examination of one of plaintiffs' witnesses, defense counsel observed plaintiffs' attorney making faces and other gestures. Defense counsel objected and plaintiffs' attorney apologized to the court and jury. Not having seen the behavior, the court did not censure the attorney. It does not appear that the attorney repeated the behavior. We find that defendants were not deprived of a fair trial.

Defendants assert that plaintiffs' attorney improperly spoke with one of the defendants during trial. The attorney claimed that the defendant had volunteered certain information. The defendant said he did not recollect the alleged conversation, and the matter was then dropped. We are not persuaded that there was an unethical communication. Nor are we persuaded that the defendant's credibility was unfairly pitted against that of plaintiffs' attorney. Defendants do not argue that plaintiffs' attorney's conduct was dishonest, and we think the attorney otherwise could properly ask the witness about the statement. MRE 613(a).

Defendants lastly challenge the conduct of plaintiffs' attorney in offering and giving the judge a ride home one evening during the trial. Defendants assert that the attorney violated Canon 7 of the Code of Professional Responsibility, although

they do not go so far as to allege that the attorney discussed the merits of the case in violation of DR 7-110(B). In terms of actual unfairness, defendants merely rely on their other allegations of error and impropriety, as to which we find no relationship with the ride. Defendants also assert the appearance of unfairness. We agree that offering and accepting the ride was an exercise of poor judgment on the part of the trial court and trial counsel. However, weight must be given to the fact that defense counsel was present at the time and did not timely register an objection. We agree with the trial court that a mistrial was not required.

IV

Defendants next argue that summary judgment should have been granted on the negligence count based on the doctrine of governmental immunity. However, the officers' behavior at issue did not consist of discretionary-decisional acts but rather the execution of a decision. Effecting an arrest is a ministerial-operational act. An officer must make an arrest without excessive force. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 660; 363 NW2d 641 (1984). Accordingly, the defendants were not entitled to immunity, and the court properly denied their motion.

V

Defendants argue that the court erred in refusing to reconvene the jury where juror affidavits indicated that the judgment was inconsistent with the verdict intended. Defendants accept as black letter law the rule set forth in *Hoffman v Monroe Public Schools,* 96 Mich App 256, 261; 292 NW2d 542 (1980), lv den 409 Mich 931 (1980):

> [O]nce a jury has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. After that point, oral testimony or affidavits by the jurors may only be received on extraneous or outside errors (such as undue influence by outside parties), or to correct clerical errors or matters of form.

Defendants argue that the present case fits within the clerical error exception and that *Dunham v Veterans of Foreign Wars Club of Muskegon, Post 446,* 104 Mich App 541; 305 NW2d 260 (1981), lv den 412 Mich 912 (1982), is on point.

The court considered this issue twice and both times refused to grant defendants' request to reconvene the jury. The first time, the court touched on many points: many hours were spent by the court and the attorneys together developing the special verdict form; defendants did not object to the special verdict form as given to the jury; the jury had been polled and discharged thirty days earlier and it was unknown if they were still available; the jury did not request clarification of the verdict form; the juror that submitted the affidavit was not competent to challenge the verdict; and the special verdict form was unambiguous. On the second occasion that this matter was before the court, more than five months after trial, defendants obtained on the same day an affidavit from another juror. The court reiterated that the verdict form was unambiguous and defendants had not objected to it.

We are not convinced that the verdict form is without ambiguity. Question 8 was titled "*Damages under Counts I, II, V, VI, and VII*" and provided space for the jury to fill in actual and exemplary compensatory damages as to plaintiff Joseph Gainey. It separately provided for punitive damages as to Counts I and II. Question 9, dealing

with malicious prosecution (Count IV), stated in part:

In addition to any award under question 8 above, we award plaintiff compensatory actual damages, applicable to this specific action only.

Question 10 dealt with negligence (Count III). Rather than repeat language similar to that in question 9, it stated:

Without duplicating any damages that might have been awarded under Counts I, II, IV, V, VI or VII, what is the total amount of plaintiff's damages?

The affidavits of the two jurors are to the effect that the jury found no compensatory damages for negligence different from that awarded in question 8 and therefore merely repeated the compensatory amounts as the "total" compensatory damages to plaintiff in question 10.

That the verdict form may have been unclear and the jury misunderstood it does not require reversal. Misunderstanding usually is said to inhere in the verdict. See *Brillhart v Mullins,* 128 Mich App 140; 339 NW2d 722 (1983); Anno: *Competency of juror's statement of affidavit to show that verdict in civil case was not correctly recorded,* 18 ALR3d 1132. This case, if the affidavits are true, is one of misunderstanding of the verdict and not mere clerical error. Nevertheless, even taking defendants' approach pursuant to *Dunham, supra,* we find no reversible error.

The clerical error exception exists because,

presumably, the correct information will already exist on the record and it will merely be a matter of conforming the written judgment to the earlier

> in-court statements; no invasion of the juror's room or minds will be necessitated. [*Hoffman, supra,* p 261.]

*Dunham* appears to be based on a generous interpretation of this exception. In *Brillhart, supra,* p 154, this Court concluded that the *Dunham* panel was probably "influenced by the fact that plaintiff's closing argument to the jury suggested the same figure claimed on appeal to be the amount the jury intended." Unlike *Dunham,* there is nothing in the present record to support the intepretation of the verdict form presented in the juror affidavits. Any relief would have to be based solely and completely upon what the jurors said they intended, although they had been polled at trial and affirmed that the verdict was their own. This case clearly fits within the general rule set forth in *Hoffman.* For these reasons we affirm the trial court's refusal to reconvene the jury.

VI

Defendants next challenge the court's award of attorney fees. Plaintiffs had filed a taxable bill of costs in the amount of $2,150.09 and a time record showing 290 hours. Plaintiffs requested that attorney fees be awarded at an hourly rate of $100 for a total of $29,000. The trial court allowed only $505 for uncontested filing fees, service fees and witness fees. However, it awarded plaintiffs attorney fees in the amount of $43,500, one-and-one-half times what plaintiffs requested. The court noted that plaintiffs were requesting a mediation rejection attorney fee, pursuant to WCCR 403, or a reasonable attorney fee, pursuant to 42 USC 1988. The court's analysis reveals that it proceeded on the basis of the local rule, imposing sanctions for the purpose of discouraging unnecessary trial of

contested cases. The court took note of the maximum allowable fee of one-third of the amount recovered. See GCR 1963, 928. The court then considered the guidelines set forth in *Crawley v Shick,* 48 Mich App 728; 211 NW2d 217 (1973).

The *Crawley* guidelines were adopted by the Supreme Court in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982). The Supreme Court went on to state that a trial court is not limited to those factors in making its determination of reasonableness, and that the trial court need not detail its findings as to each specific factor considered. The standard of review is abuse of discretion.

There is a flaw in the trial court's analysis bringing together WCCR 403 and *Crawley.* The court rule provides for "an attorney fee for each day of trial in circuit court, determined by the trial judge in accordance with the fee prevailing locally." While such a fee must be reasonable, it is not determined by weighing numerous factors but rather by looking to one factor—prevailing local fees. Thus, *Crawley,* which applies where "reasonable fees" are authorized in the broad discretion of the court, is inapplicable here.

The only evidence of prevailing local fees was plaintiffs' requested rate of $100 per hour, which was the rate billed by the attorney's law firm. Plaintiffs' time record indicates that 84.5 hours were actually spent in trial so $8,450 is the maximum attorney fee authorized by the court rule given the evidence of record.

Any additional fee must therefore flow from the federal civil rights claim. The trial court did consider what is a reasonable fee pursuant to 42 USC 1988, so we deem a remand necessary. What Congress intended a reasonable fee to be pursuant to 42 USC 1988 is a matter of federal law. Accordingly, on remand, the lower court shall consider

federal law on the subject, including *Pennsylvania v Delaware Valley Citizens' Council for Clean Air,* 478 US —; 106 S Ct 3088; 92 L Ed 2d 439 (1986).

VII

We find no merit in defendants' claim that the trial court abused its discretion in denying defendants' motion for remittitur. *Precopio v Detroit,* 415 Mich 457; 330 NW2d 802 (1982).

Affirmed in part and remanded for the court to reconsider reasonable attorney fees pursuant to 42 USC 1988.