GAINEY v SIELOFF (ON REMAND)

Docket No. 100339. Submitted May 6, 1987, at Lansing. Decided October 6, 1987.

Joseph Gainey and Enola Gainey brought an action in the Wayne Circuit Court against Norman Sieloff, a Detroit police officer, the City of Detroit, and other individual police officers, alleging damages arising out of an alleged incident of police brutality in which Joseph Gainey was injured. The jury returned a verdict against defendants Sieloff, Smolinski and Sumner on a claim brought under 42 USC 1983, a verdict against Sieloff and the city on a claim for assault and battery, and a verdict against each individual officer for negligence. The trial court, Marvin R. Stempien, J., entered a judgment thereon. Defendants appealed, alleging numerous errors. The Court of Appeals affirmed in part and remanded to the trial court to reconsider reasonable attorney fees pursuant to 42 USC 1988. 154 Mich App 694 (1986). Defendants appealed to the Supreme Court which vacated the judgment of the Court of Appeals and remanded to the Court of Appeals for the purpose of addressing the merits of certain evidentiary rulings made by the trial court. 428 Mich 896 (1987).

The Court of Appeals, on remand, *held:*

1. The trial court's exclusion of testimony by defendants' expert medical witness regarding the cause of Joseph Gainey's arm injuries was an abuse of discretion. The error cannot be *characterized as harmless.*

2. The trial court did not err in regard to its rulings excluding testimony by defendants' expert medical witness regarding Joseph Gainey's nerve damage and range of motion following his arm injury.

3. The trial court did not abuse its discretion in excluding

REFERENCES

Am Jur 2d, Evidence §§ 249 *et seq.;* 336 *et seq.;* 503.

Am Jur 2d, Expert and Opinion Evidence §§ 1 *et seq.*

Am Jur 2d, Witnesses §§ 656 *et seq.*

Attacking or supporting credibility of witness by evidence in form of opinion or reputation, under Rule 608(a) of Federal Rules of Evidence. 52 ALR Fed 440.

certain evidence of narcotics and narcotics paraphernalia found in the plaintiffs' restaurant on the basis that such evidence was more prejudicial than probative.

4. In view of the Supreme Court's declaration in its order of remand that the evidence of prior judgments against certain defendants was not offered to establish municipal liability, the Court of Appeals reversed its prior determination that the evidence was offered to establish municipal liability. The evidence was used to show that the affected persons merely acted in conformity with their prior wrongs. Such use of the evidence was improper. Use of evidence of the police officers' past conduct was also impermissible under MRE 608(b).

Reversed and remanded.

1. WITNESSES — EXPERT WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

An expert may testify in terms of opinion; a trial court may require the prior disclosure of the underlying facts or data for such an opinion; an expert need not actually witness an event in order to render an opinion regarding it (MRE 702, 705).

2. APPEAL — WITNESSES — EXPERT WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

The erroneous exclusion of expert opinion testimony cannot be characterized as harmless error where the opinion may have affected a substantial right of the party offering such evidence (MRE 103).

3. EVIDENCE — RELEVANCY — RULES OF EVIDENCE.

Evidence regarding a subject which is not at issue in an action is properly excluded as irrelevant (MRE 401).

4. APPEAL — EVIDENCE — RULES OF EVIDENCE.

The Court of Appeals will not reverse a trial court's determination that the prejudicial effect of evidence sought to be admitted at trial outweighs its probative value unless the Court of Appeals is convinced that the trial court's determination amounts to an abuse of discretion (MRE 403).

5. CRIMINAL LAW — CHARACTER EVIDENCE — OTHER BAD ACTS — RULES OF EVIDENCE.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith; it may be admissible in criminal cases for other purposes such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same

is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged (MRE 404[b]).

6. Witnesses — Credibility — Rules of Evidence.

   Specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in MRE 609, may not be proved by extrinsic evidence; they may, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified (MRE 608[b], 609).

*Fried, Saperstein, De Vine & Kohn, P.C.* (by *James C. Howarth*), for plaintiffs.

*Donald Pailen,* Corporation Counsel, and *William L. Woodard,* Assistant Corporation Counsel, for defendants.

ON REMAND

Before: R. M. Maher, P.J., and Wahls and Hood, JJ.

Per Curiam. This case comes before us on remand from the Supreme Court for the purpose of addressing the merits of certain evidentiary rulings made by the trial court. 428 Mich 896 (1987). In our prior decision in this case, we essentially concluded that the majority of issues now under consideration were not reviewable due to their abandonment or to defendants' failure to make an offer of proof. 154 Mich App 694, 700-702; 398 NW2d 498 (1986). In view of the conclusions stated in the Supreme Court's order of remand regarding the evidentiary matters now before us, we reverse our prior decision.

The underlying facts in this police-brutality action were set forth in our prior decision:

> The defendant police officers testified that they raided Ricky's Restaurant, which was owned by plaintiffs, based on information that two men were dealing drugs there. As they approached the restaurant, a crowd dispersed and two individuals ran inside. As Officer Sieloff began to open the door, it was slammed in his face. He then managed to get inside, where he was confronted by plaintiff Joseph Gainey with a stick. Soon, the other officers were able to push their way in, and they saw Sieloff and Gainey engaged in a physical struggle. Officers Smolinski and Sumner pulled Gainey away and removed him from the premises. Gainey resisted strongly and as they got through the door, they fell to the sidewalk.
>
> Gainey testified that he was holding the door closed during a shift change, when the police burst in unannounced. As the door was flung open, Gainey was knocked to the floor. As he tried to get up, a police officer struck him on the arm with a black, cylindrical object. Although he did not struggle, an officer kicked him in the stomach while two others dragged him outside. There, he was thrown to the ground, kneed in the back and handcuffed. Because of the trauma, he urinated in his pants.
>
> Gainey was taken to the First Precinct station. He testified that, while handcuffed and confined to the bullpen, Officer Sieloff struck him in the mouth. He was then handed a citation for interfering with a police officer in the performance of his duty. Gainey noticed that his left arm was swelling and requested medical treatment. It is unclear how long a delay occurred, but once he was taken to the hospital he had to wait several hours in the emergency room. The hospital staff then determined that he had a broken arm, and they applied a temporary cast. He was held overnight as a police prisoner with his right arm handcuffed to the bed.

Gainey eventually underwent surgery and a metal plate was screwed to the bone to secure the fracture. There was permanent injury to the arm because of damaged nerves which could not be surgically corrected. Gainey also underwent an operation on a preexisting hernia which was apparently aggravated in the course of his arrest. Gainey was never convicted of the interference charge as the police officers failed to appear at the time scheduled for trial.

Plaintiffs filed a nine-count complaint. Pursuant to an order granting partial summary judgment, Count VIII was dismissed. The remaining counts were submitted to the jury. The jury returned a verdict of no cause of action as to Count II, conspiracy pursuant to 42 USC 1985, Count IV, malicious prosecution, Count VI, false arrest and imprisonment, and Count VII, intentional infliction of emotional distress. As to Count I, a claim brought under 42 USC 1983, the jury found liability only against Officers Sieloff, Smolinski and Sumner. As to Count V, a claim for assault and battery, the jury found direct liability only against Sieloff and found vicarious liability against the City of Detroit. As to Counts I and V, the jury awarded actual damages of $100,000, exemplary damages of $50,000, and punitive damages of $30,000 with respect to the federal claim. The jury also concluded, as to Count III, that each of the officers was liable for negligence. With respect to the neglience count, the jury found that plaintiff's total damages, without duplicating any damages awarded on Counts I and V, were $100,000 in actual damages and $50,000 in exemplary damages. As to Count IX, plaintiff Enola Gainey's claim for loss of consortium, the jury awarded $75,000. [154 Mich App 698-699.]

The first issue we address on remand concerns the trial court's exclusion of testimony by defendants' expert medical witness, Joseph Posch, M.D., regarding the cause of Joseph Gainey's arm inju-

ries. In our previous opinion, we concluded that defendants' failure to pursue laying a foundation for the admission of this evidence constituted an abandonment of the issue. 154 Mich App 700. The Supreme Court, in its order of remand, however, stated that "[a]n offer of proof as to the expert's opinions was not required because the substance of the testimony was apparent from the context in which the questions were asked. MRE 103." 428 Mich 896.

Howard B. Schwartz, M.D., plaintiffs' expert medical witness, testified without objection at a video deposition which was presented to the jury that Joseph Gainey's broken arm was most likely the result of the arm having been hit with significant force by a blunt object and not of Gainey's having fallen to the ground. At trial, when defendants' expert medical witness, Dr. Posch, was asked by defense counsel to disclose his "opinion as to how the break in Gainey's arm occurred," plaintiffs objected, apparently on the basis that the question lacked a sufficient foundation. The objection was sustained, and counsel went on to establish that Dr. Posch had performed surgery on similar fractures approximately twelve times and that such a fracture was very rare. The expert opined that it was possible for such a fracture to occur as the result of being struck by a blunt instrument or of a fall. Defense counsel then asked:

> Based upon your review [of the medical records and x-rays] and your experience and training, what is your opinion as to how Mr. Gainey's arm was broken?

Plaintiffs objected on the basis that Dr. Posch had no "personal knowledge of how that break may

have occurred," and the trial court sustained the objection, stating:

> I appreciate the fact he's reviewed the x-rays and that he is certainly qualified as a medical expert, but to respond to the question in the form that it's been asked, would call for speculation on his part because it goes beyond the realm of medical expertise. To ask him what his opinion is as to how the break occurred. Certainly, I suppose, [a] medical expert could testify to certain areas of experience in terms of how breaks are incurred. But certainly you can't asked [sic] him what his opinion is, how this specific·break occurred, unless he has some basis in fact to make a statement.
>
> So you certainly haven't laid a foundation first of all. And secondly, the question in the form which it's asked calls for speculation.

Defense counsel then established that Dr. Posch had seen thousands of broken forearms and asked the expert whether he had earlier stated that a fracture such as Gainey's was rare, to which Dr. Posch responded:

> We have this type of break, 'cause there's not only a break in the radius, in the left radius where —but there's also a dislocation of the wrist because of the—I thought of a fall.

Plaintiffs immediately objected on the basis that Dr. Posch's answer was not responsive to the question, and the trial court sustained the objection "because the answer is not responsive and it's based upon speculation." Later, the trial court also sustained plaintiffs' objection when defense counsel began summarizing Dr. Posch's testimony in closing argument, indicating that the fracture was caused by a fall. The court instructed the jury to disregard defense counsel's statement.

We find that the trial court's exclusion of Dr. Posch's opinion regarding the cause of Gainey's broken arm constitutes an abuse of discretion. It seems clear to us that Dr. Posch was a qualified expert, that the facts of the case required an expert's interpretation, and that Dr. Posch's knowledge was peculiar to experts rather than to lay persons. *Gallagher v Parshall,* 97 Mich App 654, 657; 296 NW2d 132 (1980). An expert may testify in terms of opinion, and a trial court may require the prior disclosure of the underlying facts or data for such an opinion. MRE 705; *Thornhill v Detroit,* 142 Mich App 656, 658; 369 NW2d 871 (1985). In this case, defense counsel established that Dr. Posch was a qualified medical expert who had reviewed Gainey's medical records and had examined the x-rays of Gainey's fractured arm. Obviously, any opinion rendered regarding the cause of Gainey's fracture would have been based on the expert's review of Gainey's medical records and x-rays, interpreted in light of the expert's prior experience with thousands of broken arms. The trial court seemed to suggest that the expert was required to have first-hand or eyewitness knowledge regarding the infliction of Gainey's injury in order to permit into evidence an opinion regarding the cause of the injury. An expert, however, need not actually witness an event in order to render an opinion regarding it. MRE 702. Plaintiffs' objection based on Dr. Posch's lack of "personal knowledge of how [Gainey's fracture] may have occurred" was therefore an inadequate challenge to the proffered testimony. In addition, as emphasized by defense counsel, Dr. Posch had stated that he had already examined Gainey's medical records and x-rays; thus, any opinion regarding the cause of Gainey's fracture would not have been based on mere speculation. It is true

that defense counsel did not specifically ask his expert whether he relied upon Gainey's medical records and x-rays in forming his expert opinion regarding the cause of the broken forearm. In the context of the testimony, however, such reliance by Dr. Posch was clearly evident and, in any case, was not so lacking as to justify the preclusion of the expert's opinion based on the lack of a proper evidentiary foundation.

Moreover, the preclusion from evidence of Dr. Posch's opinion that Gainey's arm injury was sustained as the result of a fall cannot be characterized as harmless error because that opinion may have affected a substantial right of defendants. MRE 103. Dr. Posch's opinion would have directly contradicted the opinion of plaintiffs' medical expert that the arm injury was inflicted by a blunt object, and thus may have indicated that defendants' behavior was considerably less egregious. Such a conclusion may have, in turn, influenced the jury in assessing liability or damages.

Defendants also allege error based on two additional evidentiary rulings regarding their expert medical witness. Specifically, the trial court excluded certain evidence concerning Gainey's nerve damage and range of motion in the wake of his arm injury. On these issues, we discern no error. Plaintiffs' medical expert, Dr. Schwartz, had repeatedly testified that Gainey's broken arm resulted in permanent nerve damage. Nevertheless, when defense counsel questioned Dr. Posch about nerve damage to Gainey's radial and ulnar nerves (two of the three nerves in the forearm) even after having undergone surgery, and plaintiffs objected on the basis of the lack of a proper foundation, neither the trial court nor defense counsel could recall any specific references by Dr. Schwartz regarding such nerve damage. Instead, defense coun-

sel stated, "I believe there was testimony about a certain amount of numbness," to which the trial court responded:

> Well, again, the Court would not from that deduce automatically there was involvement of the radial or medial [sic] nerves. I don't think you've laid a proper foundation for the question, Counsel. If there is testimony of numbness, then that's where you've got to begin, with numbness, not with the radial and ulnar nerve[s].

Although defense counsel's recollection of Dr. Schwartz's testimony was faulty, he could have elicited evidence from Dr. Posch concerning Gainey's radial and ulnar nerve damage had he merely accepted the court's invitation to lay a proper foundation. He could have done so either by referring to the relevant portions of Dr. Schwartz's testimony or by questioning Dr. Posch further about the position and nature of the radial and ulnar nerves and their relevance, if any, to Gainey's injury. This he failed to do. We decline to permit this choice by defense counsel to abandon the issue to be used on appeal as a basis for reversal in favor of defendants.

We also conclude that no error occurred by the trial court's exclusion of expert testimony regarding Gainey's range of motion. After establishing that Dr. Posch had performed surgery similar to that performed on Gainey approximately twelve times, defense counsel asked Dr. Posch to render an opinion "as to [the] loss of range of motion after this type of surgery," to which plaintiffs objected on the basis of the lack of a sufficient foundation for the question, and the trial court stated:

> Counsel, you have to bring your questions in to

the realm of the specific factual issue that's before this jury with regard to the medical testimony. That question is very broad and it calls for a very general response. And what is before this jury is not a very general, broad medical question but a specific medical question as to the left arm, left forearm of the Plaintiff. So that objection is sustained.

We agree with the trial court that the response of others to the type of surgery undergone by Gainey was not at issue in this action. Accordingly, such evidence was properly excludable as being irrelevant. MRE 401.

Next, defendants argue that the trial court erred in excluding certain evidence of narcotics and narcotics paraphernalia on the basis that such evidence, although relevant, was more prejudicial than probative. MRE 403. In our prior decision, we concluded that the trial court's ruling on this issue was provisional and that because defendants never sought to introduce the narcotics evidence at trial they failed to preserve the issue for review. 154 Mich App 701. In its order of remand, however, the Supreme Court stated that "The trial judge . . . made a final ruling on the introduction of evidence that narcotics were found." 428 Mich 896. This Court will not reverse a trial court's determination that the prejudicial effect of evidence outweighs its probative value unless convinced that that determination amounts to an abuse of discretion. *Kirk v Ford Motor Co,* 147 Mich App 337, 343; 383 NW2d 193 (1985), lv den 426 Mich 866 (1986).

In this case, plaintiffs filed a written motion in limine seeking to exclude evidence that suspected narcotics and more than fifty disposable syringes were found on the floor of Ricky's Restaurant at the time of Gainey's arrest. Besides the fact that

plaintiffs owned the restaurant, there was no assertion that Gainey was involved with drugs or drug trafficking. Plaintiffs argued that the evidence was not relevant to whether the officers used excessive force or to other issues in dispute, and that it was more prejudicial than probative. Defendants requested that the motion be denied since the evidence would "give credence to the fact as to why the police officers were going into this particular restaurant, based on what an informant had told them."

The trial court ruled that the evidence, while relevant in that it helped to explain why defendants were at Ricky's Restaurant, was more prejudicial than probative. The court detected

> a danger in confusing the jury . . . [by] directing their attention on a side issue, which the Court views the narcotics paraphernalia to be, rather than keeping the jury's attention on the issue before the jury in this Complaint, which is a claim for damages caused by actions that were not related to the narcotics paraphernalia.

We agree with this assessment. Any evidence regarding narcotics, in light of the absence of any indication that Gainey was in any way linked to the narcotics or paraphernalia, could only divert the jury from the essential issues of the case by way of innuendo. We recognize that the subject of narcotics is one which kindles the passions and inflames the emotions of many in our society. Those reputed to be connected with the drug trade are often reviled, cursed and shunned on the basis of such a connection. The stigma attached to an individual's association with narcotics is widely recognized. To emphasize such an issue in a trial concerning police brutality and under circumstances where no direct involvement with drugs by

the affected party has been alleged seems to us to be unwise. We note that plaintiffs in this case did not dispute that the police officers had a legitimate cause to investigate the restaurant based on the informant's tip, and during trial the reasons prompting the investigation were revealed—reasons including the sale of narcotics inside Ricky's Restaurant by two well-described individuals.

On appeal, however, defendants present a more compelling argument for admitting the narcotics evidence than was made at the trial level, contending, among other things, that the narcotics provided Gainey "a motive to prevent or impede the entry into the restaurant by the police officers." Such a scenario would buttress defendants' version of the facts and would cast some doubt on Gainey's assertion that he was struck on the arm by a police officer without provocation after a forceful and unannounced entry through the restuarant's door. We do not express an opinion as to whether the narcotics evidence is properly admissible in view of this argument raised by defendants for the first time on appeal, but rather leave the issue for resolution by the trial court in light of all the facts and circumstances marshalled by the parties upon retrial.

Finally, we consider the last issue before us by order of the Supreme Court: whether evidence of prior civil judgments against the police officers in this case was properly admitted. In our prior opinion, we were "persuaded that plaintiffs' purpose was to establish municipal liability" with respect to their federal claims against the city and not to use the evidence for any purpose prohibited by MRE 404 and 608. 154 Mich App 702. In the order of remand, however, the Supreme Court declared that "[t]he evidence of prior judgments against certain defendants was not offered to es-

tablish municipal liability." 428 Mich 896. In view of this declaration, we are compelled to reverse our prior determination on this issue.

In the proceedings below, defendants moved to quash plaintiffs' trial subpoenas duces tecum, which directed the defendant police officers to produce, inter alia, all documents showing internal disciplinary actions and settlements or judgments from prior civil actions relating to police misconduct. Defendants moved in limine to exclude all references to prior judgments and internal investigatory reports concerning this incident and prior disciplinary actions on the grounds that the evidence was more prejudicial than probative under MRE 403, the evidence constituted improper character evidence under MRE 404, and the evidence could not properly be used for impeachment purposes under MRE 608. Plaintiffs argued that the evidence was relevant to their claim against the City of Detroit regarding the retaining of officers with known vicious propensities and that it would tend to establish a policy or custom of retaining officers despite their repeated instances of misconduct.

The trial court indicated that the evidence was material to the claim against the municipality, but made no immediate ruling as to whether the probative value was outweighed by the prejudicial effect. Ultimately, it granted the motions in part, only allowing references to, and evidence of, previous lawsuits that resulted in judgments. With respect to the motion in limine, the court stated:

> The Court will grant—again, grant this motion in part. The Court will order that no reference may be made at the trial to any previous lawsuits except those in which there are judgments.
> Disciplinary action, reprimands, statements of

officers to administrative agencies which have to do with anything except to show a pattern or policy with regard to illegal activity or improper activity properly falling within the area of the Complaint in this cause. And no reference at all may be made to the internal investigation file and report of the internal investigations staff.

On cross-examination of Officer Robert Sumner, plaintiffs' counsel asked if a judgment had ever been entered against him for the use of excessive force. When defense counsel objected, the following discussion transpired:

> *Mr. Mateo*: Excessive force, Your Honor, is one of the claims.
> *The Court*: The Court would not—the court would overrule the objection on the basis of the specific reference to excessive force.

On cross-examination of Officer Scott Roberts, plaintiffs' counsel asked if a judgment had been entered against him for malicious prosecution and whether that case had involved, in addition, false arrest and excessive force. Defense counsel objected and the objection was overruled. There were no other references to prior judgments.

MRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person *in order to show that he acted in conformity therewith*. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent *to the crime charged*.

First, we note that the exceptions to the general rule in MRE 404(b) are applicable only to criminal cases. *Cook v Rontal,* 109 Mich App 220, 225-228; 311 NW2d 333 (1981), lv den 415 Mich 854 (1982); cf. *Warner v General Motors Corp,* 137 Mich App 340, 349; 357 NW2d 689 (1984), lv den 422 Mich 852 (1985). The exceptions apply by the rule's own stated terms only to instances regarding proof of motive, opportunity, intent, etc., material to "the crime charged." In civil cases, no crime, of course, is charged. Second, our review of the record, in light of the Supreme Court's declaration that the evidence of prior judgments in this case was not offered to establish municipal liability, leads us ineluctably to the conclusion that the evidence was used to show that the affected persons merely acted in conformity with their prior wrongs—i.e., because the police officers had previously committed wrongs concerning the use of excessive force, they were more likely to have used excessive force against Gainey. Such use of the evidence was improper.

We are also persuaded on remand that evidence of the police officers' past conduct was impermissible under MRE 608(b). That subrule provides:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, *if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Since the wrongs of excessive force and malicious prosecution are not necessarily probative of truthfulness or untruthfulness, their introduction into evidence for purposes of attacking a witness' credibility is not permitted under MRE 608(b).

In conclusion, after examining the issues remanded to us by the Supreme Court, we reverse the judgment below due to error regarding the trial court's exclusion of opinion testimony from defendants' expert medical witness and the admission of evidence of prior civil judgments regarding certain defendant police officers.

Reversed and remanded for a new trial.