# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RONNIE HUBBERT, by CHARLES
PITTS, Personal Representative,

UNPUBLISHED
December 4, 2014

Plaintiff-Appellee,

v

No. 314670
Wayne Circuit Court
LC No. 07-723845-NF

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellant.

Before: METER, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right a judgment for plaintiff[1] following a jury trial in this first-party no-fault case. We reverse and remand for a new trial.

Defendant argues that the trial court abused its discretion in striking the testimony of the defense medical expert, Dr. Phillip Friedman, as a sanction for Dr. Friedman's failure to comply with a subpoena duces tecum requiring him to produce financial documents. We agree.

This Court reviews for an abuse of discretion a trial court's decision regarding sanctions. *Jilek v Stockson (On Remand)*, 297 Mich App 663, 665; 825 NW2d 358 (2012). An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes. *Id*. "The interpretation and application of court rules present questions of law to be reviewed de novo using the principles of statutory interpretation." *Lamkin v Engram*, 295 Mich App 701, 707; 815 NW2d 793 (2012). The language of a court rule is accorded its plain and ordinary meaning. *Id*. at 709. Unambiguous language is applied as written. *Id*.

MCR 2.506(A)(1) states that a court "may by order or subpoena command a party or witness to appear for the purpose of testifying in open court on a date and time certain and from time to time and day to day thereafter until excused by the court, and to produce notes, records,

---

[1] The original plaintiff, Ronnie Hubbert, died while this action was pending. For the sake of simplicity, we will refer to Hubbert as "plaintiff" even though his estate is now technically the plaintiff in this case.

documents, photographs, or other portable tangible things as specified." MCR 2.506(E)(1) provides that a person's failure to comply with a subpoena may be considered a contempt of court. MCR 2.506(F) prescribes penalties that may be imposed if a party or an officer, director, or managing agent of a party fails to produce documents pursuant to a subpoena. Among the penalties authorized are striking pleadings, refusing to allow the party to support or oppose claims and defenses, dismissal, and default judgment. MCR 2.506(F).

Although this issue involves Dr. Friedman's failure to obey a subpoena, the trial court analyzed the issue in terms of a discovery sanction, in accordance with the factors enunciated in *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).[2] The court rule pertaining to discovery sanctions, MCR 2.313(B), provides, in relevant part:

**Failure to Comply With Order**

(1) *Sanctions by Court Where Deposition is Taken*. If a deponent fails to be sworn or to answer a question after being directed to do so by a court in the county or district in which the deposition is being taken, the failure may be considered a contempt of that court.

(2) *Sanctions by Court in Which Action Is Pending*. If a party or an officer, director, or managing agent of a party, or a person designated under MCR 2.306(B)(5) or 2.307(A)(1) to testify on behalf of a party, fails to obey an order to provide or permit discovery, including an order entered under subrule (A) of this rule or under MCR 2.311, the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

(a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party;

(d) in lieu of or in addition to the foregoing orders, an order treating as a contempt of court the failure to obey an order, except an order to submit to a physical or mental examination;

\* \* \*

---

[2] The parties also analyze the issue in accordance with the *Dean* factors.

In lieu of or in addition to the foregoing orders, the court shall require the party failing to obey the order or the attorney advising the party, or both, to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Initially, we disagree with the trial court's unstated premise that it is appropriate to sanction a party for a nonparty witness's failure to comply with a subpoena duces tecum. The trial court relied on case law pertaining to discovery sanctions in striking Dr. Friedman's testimony. The discovery sanctions authorized in MCR 2.313(B)(2) may be imposed when a party or an officer, director, or managing agent of a party, or a person designated under specific rules to testify on behalf of a party, fails to obey an order to provide or permit discovery. There is no evidence in this case that defendant or such authorized representatives failed to obey an order to provide or permit discovery. Nor did defendant or an authorized representative fail to produce documents pursuant to a subpoena, which would permit imposition of a sanction in accordance with MCR 2.506(F). It is Dr. Friedman rather than defendant who failed to produce the documents requested in the subpoena. Dr. Friedman is not a party in this matter, nor is he an officer, director, or managing agent of defendant or a person specifically designated as defendant's representative. Yet the trial court imposed sanctions *on defendant* by striking Dr. Friedman's testimony from the trial. We find no basis in the court rules to sanction a party for a nonparty witness's failure to obey a subpoena. Instead, to the extent Dr. Friedman failed to comply with the subpoena, an appropriate sanction would have been to hold Dr. Friedman in contempt. See MCR 2.506(E)(1) (a person's failure to comply with a subpoena may be considered a contempt of court); see also *McGee v Macambo Lounge, Inc*, 158 Mich App 282, 288; 404 NW2d 242 (1987) ("[i]f a non-party witness fails to obey a subpoena or order to attend, the remedy and sanctions are penalties *against the witness* for contempt of court").

At any rate, even *if* a sanction could be imposed on defendant for Dr. Friedman's failure to obey the subpoena, we conclude that the trial court's exclusion of Dr. Friedman's testimony would fall outside the range of principled outcomes. The trial court relied on the factors set forth in *Dean*, 182 Mich at 32-33, a case in which the trial court barred the plaintiff from presenting witnesses because the plaintiff failed to file a witness list on time, *id*. at 29. The *Dean* Court explained:

> Among the factors that should be considered in determining the appropriate sanction are: (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Id*. at 32-33 (citations omitted).]

"[T]he record should reflect that the trial court gave careful consideration to the factors involved and considered all of its options in determining what sanction was just and proper in the context of the case before it." *Id*. at 32.

The application of the *Dean* factors leads to the conclusion that the exclusion of Dr. Friedman's testimony, even assuming, arguendo, that it was allowed under the court rules, was not a principled outcome. With regard to the first factor, we find a weak basis for the trial court's assertion that Dr. Friedman willfully refused to comply with the subpoena. The trial court said that Dr. Friedman decided that he was not going to comply with the subpoena. The record does not adequately support that finding. Dr. Friedman indicated that he was out of town the previous week when the subpoena was served and that he learned of the subpoena from his staff one business day before his deposition, at which the subpoena required him to produce the documents.[3] Dr. Friedman had not seen the subpoena and said that his staff took care of such matters. Dr. Friedman further indicated that he did not believe his office retained many of the documents requested in the subpoena. In a subsequent affidavit, Dr. Friedman stated that neither he nor his accountant had retained the 1099 tax forms requested,[4] and he provided the time and billing records related to plaintiff that were requested in the subpoena. These facts do not adequately establish, as asserted by the trial court, that Dr. Friedman simply decided that he was not going to comply with the subpoena. That Dr. Friedman perhaps did not manage his office efficiently and that he may have been overly reliant on his staff to handle this matter may reflect a degree of negligence, but the circumstances do not clearly establish a *willful* refusal to obey the subpoena.

With respect to the second factor, neither defendant nor Dr. Friedman had a history of refusing to comply with discovery requests. There is no evidence of any previous lack of compliance.

For the third factor, we find, significantly, no basis for concluding that plaintiff was prejudiced. Although Dr. Friedman did not produce the financial documents in time for the deposition, plaintiff's counsel elicited testimony establishing Dr. Friedman's potential bias,

---

[3] Although the subpoena had originally been issued a year earlier in connection with a previously scheduled deposition of Dr. Friedman, that deposition and the original trial date were adjourned and there is no evidence that Dr. Friedman had reason to know the status of the case or that he would still be required to produce the requested documents until the subpoena was reissued a week before the deposition.

[4] The parties dispute whether federal law requires a taxpayer to save 1099s. There is no need to resolve that issue in assessing whether the trial court's sanction of striking Dr. Friedman's testimony was appropriate. There is no evidence to dispute that Dr. Friedman and his accountant did not save the documents; whether this violated federal law is beyond the purview of this case. Although it is possible that the companies that referred independent medical examinations to Dr. Friedman had the documents, we are not convinced that Dr. Friedman's failure to look into that possibility in the short time available before his deposition establishes a *willful* failure to obey the subpoena.

which was the reason for requesting the financial documents in the first place. In particular, Dr. Friedman acknowledged during the deposition that 40 percent of his practice is comprised of performing independent medical examinations (IMEs) and record reviews, that he has performed "[t]housands" of examinations for defense attorneys and insurance companies over a 20-year period, that he charges $450 an hour and will charge $450 even if the examination itself lasts only 20 minutes, and that he has probably conducted examinations for every major insurance company that conducts business in Michigan, including "Allstate, State Farm, Progressive, Citizens, Titan, Bristol-West, [and] Nationwide." He agreed that "we could go on and on" listing insurance companies. Plaintiff's counsel's thorough cross-examination on these points amply elicited Dr. Friedman's potential bias, which was the reason for requesting Dr. Friedman's financial records. Further, defense counsel expressed a willingness to recall Dr. Friedman after the records were produced, and plaintiff's counsel at one point seemed to indicate his amenability to that option. Hence, there is no basis for finding any significant prejudice to plaintiff.

The fourth factor is inapplicable in this situation. With respect to the fifth factor, there is no evidence that defendant or Dr. Friedman had a history of deliberate delay. For the sixth factor, there is no evidence that defendant or Dr. Friedman failed to comply with other court orders. In regard to the seventh factor, defendant attempted to cure the defect by producing Dr. Friedman's affidavit stating that neither he nor his accountant had the 1099s, by providing Dr. Friedman's billing and time records related to plaintiff, and by expressing a willingness to recall Dr. Friedman for further cross-examination.

Finally, regarding the eighth factor, a lesser sanction would have better served the interests of justice. As discussed, the trial court could have held Dr. Friedman in contempt. The court could also have required Dr. Friedman to appear for further cross-examination following production of whatever documents were available. Striking Dr. Friedman's testimony deprived defendant of its only expert witness who could dispute plaintiff's theory of causation linking the motor-vehicle accident to plaintiff's infection-induced paraplegia and the sequelae of that condition. Thus, a lesser sanction would have better served the interests of justice so that the jury could learn about and resolve the conflicting expert opinions regarding plaintiff's causation theory.

Application of the *Dean* factors leads to the conclusion that striking Dr. Friedman's testimony was not an appropriate sanction even if it were an available option under the court rules. Further, we hold that the trial court's error requires reversal of the judgment and a remand for a new trial.

"A trial court error in admitting or excluding evidence will not merit reversal unless a substantial right of a party is affected . . . and it affirmatively appears that failure to grant relief is inconsistent with substantial justice." *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003) (citations omitted). The trial court's striking of Dr. Friedman's testimony affected defendant's substantial rights because it deprived defendant of its sole expert witness who could dispute plaintiff's new causation theory introduced during Dr. Jawad Shah's deposition testimony. In particular, Dr. Shah testified that the motor-vehicle accident played a causal role in plaintiff's infection-induced paraplegia because he suffered cervical disc trauma in the accident, which made him more prone to an infection in that location. By contrast, Dr. Friedman opined

-5-

that there was no medical basis to causally connect plaintiff's infection to the accident, given the amount of time that had passed since the accident. Dr. Friedman further explained that there was no peer-reviewed literature suggesting that an automobile accident can cause a staph infection of a disc or that the type of mild disc herniation plaintiff suffered predisposes one to an abscess. Also, the doctor who performed an IME on plaintiff, Dr. Edward B. Trachtman, died before trial, and the trial court refused to permit admission of or reference to Dr. Trachtman's reports. Defendant had no witness other than Dr. Friedman to counter Dr. Shah's medical testimony that the motor-vehicle accident played a causal role in plaintiff's infection-induced paraplegia. Because the trial court's improper sanction prevented the jury from hearing Dr. Friedman's critical testimony, the failure to grant relief would be inconsistent with substantial justice.

Defendant argues that the case should be reassigned to a different trial judge on remand. We disagree.

Generally, an issue must have been raised before, and addressed and decided by, the trial court to be preserved for appellate review. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Also, to preserve an argument concerning a motion for disqualification, the motion "must be filed within 14 days after the moving party discovers the basis for disqualification, the moving party must include in the motion all grounds for disqualification known at the time the motion is filed, and the moving party must submit an affidavit." *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006); see also MCR 2.003(D)(1) and (2). Here, defendant did not file a motion for disqualification or otherwise raise this issue below. Hence, the issue is not preserved. Because this issue was not raised below, this Court's review is for plain error affecting substantial rights. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). With respect to a motion to disqualify a judge, "the applicability of the facts to relevant law is reviewed de novo." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001).

> The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case. We may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication. [*Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004) (citation omitted).]

The mere fact that a trial judge came to the wrong legal conclusion is not a reason to remand the case to a different judge. *Id*. at 603. "Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying. Rather, [the party seeking disqualification] must demonstrate that the judge would be unable to rule fairly on remand given . . . past comments or expressed views." *Id*. (citation omitted).

Here, defendant contends that the trial judge "had no apparent problem with [p]laintiff's sandbagging his medical theory until 10 days before trial" but "expressed outrage at" the defense medical expert's failure to produce documents that he did not have and struck his testimony erroneously. Defendant also notes that the trial judge failed to address defendant's argument that

the denial of benefits was reasonable but awarded hundreds of thousands of dollars in attorney fees anyway.

The record does not support the contention that the judge "had no apparent problem" with plaintiff's counsel "sandbagging" his causation theory. Although plaintiff's counsel did not present evidence to establish that the infection was causally connected to the accident until Dr. Shah testified, Dr. Shah stated that he did not definitively conclude that a causal connection existed until reviewing records on the date of his deposition. Defendant speculates that plaintiff's counsel may have intentionally avoided disclosing his causation theory until Dr. Shah's deposition, but the record is not developed concerning whether this was a deliberate strategy, let alone whether the trial judge was aware of such a strategy. Hence, it is mere conjecture to assert that the trial judge had "no apparent problem" with "sandbagging." Further, the fact that the trial judge made an erroneous legal ruling in this case is insufficient to require her disqualification. *Id*. Moreover, although the judge failed to make the requisite finding of unreasonableness before awarding attorney fees, there is no basis to conclude that this was anything but an oversight. We find no indication in the record that the trial judge would be unable to rule fairly on remand given her past comments or expressed views, or that reassignment is advisable to preserve the appearance of justice. *Id*. As plaintiff notes, the trial judge also ruled against plaintiff at various points during the trial. The judge made no comments on the record indicating any expressed bias. *Id*. Therefore, defendant has failed to establish that reassigning the case to a different judge on remand is appropriate.

Defendant also raises issues regarding jury instructions and attorney fees. Given our resolution of this appeal, these issues are not currently ripe for review, and we decline to address them.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly

-7-